STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-98-22

DHM-KEN-4/26/2000

JOHN BAKER,

      Plaintiff

v.

DECISION AND ORDER

DAVID L. MANTER and
ROBERTA J. MANTER,

      Defendants

This matter is before the court after jury trial on plaintiff's complaint arising out of activities of the parties on and about the Young Road in Fayette. All parties own real estate on the road. The plaintiff alleges that the defendants have physically interfered with plaintiff's access to his property and that he has suffered economic damages therefrom. In addition, the plaintiff requests injunctive relief and exemplary damages. A temporary restraining order was issued by this court on March 19, 1998. The defendants have filed an answer and have represented themselves throughout the entire proceedings. In addition, the defendants filed a counterclaim in which they seek reimbursement from the plaintiff for costs involved in repairing damages to the Young Road and requesting further injunctive relief. On December 22, 1998, the court issued a permanent injunction by way of granting plaintiff's motion for summary judgment on count II of his complaint primarily based upon the legal history of this dispute.

In 1945, the Kennebec County Commissioners discontinued the Young Road by abandonment pursuant to 23 M.R.S.A. § 3028 and retained a public easement as

defined in 23 M.R.S.A. § 3021. Thus, the public retained an unfettered right of access over that road but the town kept no maintenance responsibility. The Commissioners' decision was not timely appealed. The impropriety of the Commissioners' decision was argued by the defendants in two earlier cases which they appealed all the way to the United States Supreme Court. In *Town of Fayette v. Manter*, 528 A.2d 887 (Me. 1987), *cert. denied*, 485 U.S. 937, the Law Court held that the 1945 Commissioners' decision could not be collaterally attacked over 40 years after it was made, that Young Road was discontinued, and that a public easement over it was retained by the Town of Fayette. *Ibid.* at 889-890. In *Manter v. Town of Fayette*, 556 A.2d 665 (Me. 1989), *cert. dismissed*, 485 U.S. 984, the Law Court affirmed the dismissal of the defendants' complaint finding that its prior decision established the status of Young Road.

In spite of this history, the defendants have continued their activities asserting property rights in the Young Road contrary to the rights of other road abutting owners and the public. Paraphrasing the defendants' testimony, they have been asserting their constitutional rights to utilize civil disobedience in opposition to what they consider an unjust result from application of the previous court decisions and the law.

The Young Road is approximately 1.7 miles long running from the Richmond Mills Road in Fayette and Wayne in the south to the Oak Hill Road in Fayette in the north. The defendants live on land on the Young Road nearest the southerly end. The plaintiff has woodlots a short distance northerly on the road

2

from the defendants. Approximately between the two properties is the property of Engelhardt. The entrance to the Engelhardt property is a driveway near the foot of a hill running northerly toward plaintiff's property. This Engelhardt location is considered by the participants to be the dividing point at which the Young Road is described with a southerly portion and a northerly portion. The southerly portion has been rebuilt and relatively well maintained by the defendants. The northerly portion has considerably different terrain and, while it has been repaired on occasion, is not well maintained and has, at times, been used for logging traffic. The plaintiff, and others who cut logs for him, have made it clear over the years that they prefer to use the southerly portion of the Young Road to get to their property. It is a shorter distance to the highway, it is a better road, and, other than a narrowness created by 12 foot culverts and defendants' equipment parked close to the road, is a much more convenient and usable access to the woodlots.

While acknowledging that some years ago the plaintiff and other neighbors assisted in some reconstruction of the southerly portion of the Young Road, the defendants insist that maintenance of the southerly portion has been exclusively at the time and expense of their family. The plaintiff does not deny this. Defendants assert that the southerly portion should not be used by the plaintiff for his heavy trucks because it will damage the road and they are not satisfied the plaintiff will assist in making repairs of such damage. Notwithstanding attempts by the plaintiff to do road work in the area in question, the defendants object to the "manner in which the work is to be done."

3

In addition, the defendants do not feel they have been properly treated by the town. In spite of efforts by the town to make arrangements to clarify the status of ownership of rights over the Young Road and, this court assumes, the responsibilities for maintenance of the road, the defendants have continued to express that they have not been treated with the proper respect by the town and its officers and employees.

In a previous action, the defendants suffered judgment for obstruction of a right-of-way they shared on the property with another landowner. In spite of this judgment and the various Law Court decisions, the defendants have continued activities in defiance of the court orders, the rights of other property owners, and the traveling public.

Persons conducting lawful activities in the area have been threatened by the defendants. Persons have been subject to confrontation by the defendants including defendants' use of motor vehicles to prevent passage of others or, in more serious cases, to block in the vehicles of others holding them hostage from leaving the areas. On one occasion of such activity, defendant David Manter stated he wanted "to make a statement to the town." On one occasion, both defendants stood in front of a pulp truck preventing it from leaving the area southerly along the Young Road. When the truck operator started again at a very slow rate of speed, defendant David Manter jumped on the bumper of the truck and was carried along at a slow rate of speed for over an hour. Fire officials for the Town of Fayette attempting to examine the status of the road and the fire danger conditions of the woods have had

4

confrontations with defendants. The same fire officials have cautioned the defendants of concerns over the narrow roadway created by the placement of defendants' equipment.

All of these activities came to a head in the fall of 1997. While there is significant disagreement among the various witnesses over the dates and details, it appears that in October of 1997, the defendants, utilizing a backhoe belonging to Engelhardt and in defendants' custody for purpose of repair, dug a ditch across the Young Road. From the various testimonies and photographs, it would appear that it was a ditch varying in depth from one foot to three feet and with a pile of materials taken from the ditch next to it of an equal height. The ditch was dug by the defendant ostensibly for purposes of installing a culvert. This culvert would have been justified because of a significant amount of water run-off coming down the hill next northerly to the Engelhardt property. This run-off causes significant erosion as well as creating a very dangerous ice condition in the winter and spring. Notwithstanding the defendants' stated intentions, they never did put a culvert in the ditch claiming they did not have sufficient funds to do so. This activity took place after a previous incident in which the defendants prevented an independent contractor working for the plaintiff from installing a culvert in the same location for purposes of alleviating the same condition. The defendants were not satisfied "in the manner in which it was to be done."

Having dug the ditch and left the pile, and not making any attempt to install a culvert, the defendants further left no signs or other devices warning of the ditch.

5

By their own admission, defendants were well aware that the ditch would obstruct the traffic on the Young Road. Under those circumstances; the plaintiff, while proceeding southerly on the road with his pick-up and having been made aware of the pile of gravel, attempted to traverse the area and discovered the unmarked ditch. By the time he observed the ditch, it was too late to stop and he proceeded through it. While he became immediately aware of the damage to the manifold system of his truck, creating a sound unmistakable to observers, he was not fully aware of the full damage until the truck broke down the following month.

The plaintiff then requested of his independent contractor that he take a skidder to the location and fill in the ditch which was done. At this point, there is a dispute as to the number of times the ditch was dug and filled in. Defendants insist they only dug the ditch on one occasion and it was filled in by the skidder on a single occasion. However, other persons working in the area testified that they also filled in the ditch. Nevertheless, it is undisputed that subsequent to the ditch being filled in, the defendants' daughter, out of a sense of concern over the extreme attitude of her father in preventing traffic on the road, took a shovel and redug the ditch. Inasmuch as the roads were beginning to freeze for the winter, no further attempt to refill the ditch was made until the spring of 1998.

On April 26, 1998, at plaintiff's request, a trooper of the Maine State Police accompanied the plaintiff to the scene. The plaintiff used the plow on his pick-up to fill in the ditch. It appears to remain filled in. However, in July of 1999, the Maine State Police again went to the area upon complaint to note the obstruction of the

6

Young Road by signs placed there by the defendants. In defendant David Manter's words, he put pipes and stakes by the road. There were four stakes on each side of his property line, north and south, with four foot pipes extending six inches into the ground. South of his property, he placed the stakes 22 feet apart on each side of the Young Road and one in the middle of the road. There was seven and one-half feet on each side of the stake in the middle of the road. On the north side of his property, he placed the stakes 15 1/2 feet apart on the road. As a result of this obstruction, the defendant was charged with obstruction of a way which matter is still pending.

Because of these many activities by the defendants, some of them subsequent to the injunctions issued by this court, the plaintiff seeks damages. Plaintiff seeks to bring finality to this long saga of disputes over utilization of the public easement in an attempt to recover damages for his losses and to punish the defendants for their activities. Plaintiff testified that he has attempted to sell house lots in his woodlot area but that realtors have refused to consider the matter and persons have declined to be interested based upon defendants' conduct. While there may be some truth to these allegations, the plaintiff provided no evidence sufficient to make it more likely than not that any person or persons deliberately refused to be willing to purchase a house lot because of the defendants, the knowledge of their activities, or the status with respect to the road.

The plaintiff seeks compensation for damages to his motor vehicle. The defendants question the credibility of these claims inasmuch as the repairs were not

made for some time after the accident, an accident report has never been filed in written form, and they were not notified of the damages until discovery in this case in March of 1998. The matter is somewhat confused by the fact that the plaintiff, at that time, operated an automobile repair garage not far from the Young Road, he purchased parts on a discounted basis, and the performed the labor personally. Adjusting his claims for the discounts and the actual value of his labor without overhead, the court determines his injury for damage to his pick-up truck to be $1,186.15.

Plaintiff alleges there is sufficient clear and convincing evidence to establish that defendants' activities in obstructing the plaintiff's use of the road and causing damage to him was done as a result of actual malice and, if not actual malice, by such outrageous conduct that malice should be imputed. Under those circumstances, plaintiff seeks punitive damages and attorney's fees. In that regard, the plaintiff presented evidence of a probate estate to which the defendants are to receive an inheritance in the estimated amount of $87,000 to $90,000. Attorney's fees as presented by counsel for plaintiff are in excess of $18,000.

In the late 1980's, the defendants became aware in a most unequivocal manner that the law would not allow them to treat the Young Road as their personal real estate, that other persons owning property on the road must have clear access, and that it was a public easement notwithstanding it no longer was a town road. In 1998, the Supreme Judicial Court of Maine made it clear to the defendants in an unequivocal manner that interfering with the property rights of others by

8

intentionally blocking an easement will entitle a damaged party to compensatory damages and punitive damages where the conduct is outrageous and done in a manner exhibiting malice toward the owner of the right. In spite of all those circumstances, the defendants have clearly admitted that they stopped the plaintiff and another in attempting to repair and improve maintenance of the road by installing a culvert, that they have continued to stop people traveling on the road, that defendant David Manter yells and screams at people operating on the road in a manner not to his satisfaction, that he has mentioned to the plaintiff his possession of a firearm in a conversation somewhat confrontational, that he was well aware of the desire of plaintiff to use the road to support a logging operation with representations that he would repair any damage done, that he deliberately dug a ditch ostensibly for purposes of installing a culvert but into which he placed no culvert notwithstanding having the opportunity and knowing "it would be a problem with the plaintiff but I did it anyway," that the ditch and pile were not marked and clearly did damage to plaintiff's property and that of others, that he was aware that he was placing his equipment within an area confining what was to be the expected width of the right-of-way, and that he did all of these things in a willful, intentional, and deliberate attempt to deny the ability of plaintiff to traverse a public easement and, by any objective standard, with a foreseeability of damage and injury to the plaintiff in utilizing the road. In the entire history of this case, including multiple hearings for injunctive purposes, the defendants have denied the validity of the rights of others in this road and have made it clear that they

9

would conduct themselves in a manner more consistent with their perception of their constitutional rights rather than those rights enumerated by our appellate courts. The activities of the defendants have been outrageous and because they have a direct relationship with the desire of plaintiff to utilize the road to conduct operations on his woodlots, the activities have been clearly malicious as to the plaintiff. Numerous instances of litigation, extended appeals, confrontations, threats, and noncooperation with town authorities all have provided the background for a necessity on the part of the plaintiff to litigate the conduct once and for all and to bring this activity to a conclusion. The litigation with the town established the lawful rights of the parties but did not stop the obstructive activity. The civil lawsuit by a neighbor resulting in punitive damages assessed against the defendants settled the matters with respect to that neighbor and that right-of-way but not this plaintiff. Therefore, it was necessary for the plaintiff to undertake this action and undertake these expenses in prosecuting this litigation in order to attempt to bring some finality in the relationship between he and the defendants. It is clear that the expenses of litigation as represented by attorney's fees and other costs are the direct result of the outrageous behavior of the defendants.

It is important for this court to make an observation of the presentation by the defendants in their closing arguments in the trial of this matter. Both defendants instructed the court that they would no longer undertake the activities complained of but would only use lawful means to assert their property rights. They indicated they would further research their options in resolving the very

10

inequitable position they believe they find themselves in, that is, the need to maintain a public easement to have access to their residence at the risk of damage to that easement by commercial activities of others who may or may not accept responsibility for repair of the damage caused. In his final comments, David Manter apologized to the court and clearly stated that he would not be a problem in the future. The court accepts these statements as a commitment by Mr. and Mrs. Manter to consider this action the end of the need for litigation and to address the problems of the Young Road with the town and with their neighbors in a constructive and lawful manner. But for this apology and commitment, this court would be likely, in light of the new found wealth of the defendants, to accede to the wishes of the plaintiff and access punitive damages in an extremely substantial amount. It is hopeful that some of these means coming to the defendants will be utilized in addressing some of the problems arising from the status of the Young Road.

The court finds that plaintiff has incurred expenses of $1,186.15 as damages for injuries suffered through the activities of the defendants in maintaining a ditch and pile of gravel across a public easement without sufficient warning to the plaintiff; the court finds that the conduct of the defendants in obstructing the lawful rights of the plaintiff is so egregious as to warrant the assessment of attorney's fees as damages. The defendants repeatedly have refused to comply with the injunctive relief, have refused to honor the decisions of the Supreme Judicial Court, and have clearly exhibited significant bad faith in their conduct toward the plaintiff. Inasmuch as that conduct is the direct cause of the imposition of attorney's fees

11

upon the plaintiff, defendants shall reimburse the plaintiff the amount of $18,208.06 for attorney's fees.

The court notes that on a previous occasion this court rendered judgment against the defendants for punitive damages in an action involving a right-of-way in the vicinity of the Young Road in the amount of $500. This amount was based upon the financial condition of the defendants at that time. While the defendants have an expectancy in the relatively near future of a significant amount of money, the court believes the punitive damage clearly called for in this case should be appropriate to the circumstance and consistent with the previous assessed punitive damages. Therefore, the court believes that punitive damages in the amount of $5,000 is appropriate.

By their counterclaim, the defendants seek judgment against plaintiff for reimbursement for costs involved in repairing damages to the Young Road occasioned by plaintiff's logging activity and further seeking injunctive relief by way of an order prohibiting plaintiff from causing undue damage to the road. As a matter of equity, the defendants have a sound basis for complaining that they should not be burdened with the sole cost of maintaining the southerly portion of the road if there is to be extraordinary damage to that portion of the road from the activities of the plaintiff. Unfortunately, the defendants have presented no evidence that heretofore the plaintiff has damaged the road or that defendants have incurred any particular expense in effectuating repairs for injury caused by the

12

plaintiff. Accordingly, while the defendants may be entitled to some equitable relief, there is no evidence of damages.

The entry will be:

Judgment for plaintiff on his complaint in the amount of $1,186.15 as special damages; $18,208.06 as attorney's fees and costs; and $5,000 punitive damages; judgment for plaintiff on defendants' counterclaim for damages; judgment for defendants on defendants' counterclaim for equitable relief; plaintiff is ordered to cause all repairs to the southerly portion of the Young Road for any damage caused by the transportation of heavy loads attendant to his logging operations.

Dated: April 2⁶ , 2000

Donald H. Marden
Justice, Superior Court

13

Date Filed __3/11/98__     __Kennebec__     Docket No. __RE98-22__
County

Action __Equitable remedies/Trespass__



DONALD L. GARBRECHT
LAW LIBRARY

John Baker            vs. David and Roberta Manter

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Jed Davis Esq<br>86 Winthrop St<br>Augusta  Me   04330 | David Manter Pro Se<br>~~Young Road~~  PO Box 191<br>~~Fayette  Me  04349~~ Wayne Me   04284 |

| Date of Entry | |
|---|---|
| 3/11/98 | Complaint filed.  s/Davis,Esq.<br>Plaintiffs motion for temporary restraining order(with incorporated memorandum) filed.  s/Davis,Esq.<br>Affidavit of John Baker filed.<br>Affidavit of Jed Davis filed.<br>Proposed temporary restraining order with notice filed.<br>PT scheduling statement mailed to Atty. |
| 3/19/98 | Hearing had on temporary restraining order with Justice Marden presiding, tapes 418 & 419.<br>Atty. Davis present for plaintiff, Mr & Mrs Manter acting pro se.<br>Clerk to set date for an injunction hearing. |
| 3/19/98 | TEMPORARY RESTRAINING ORDER WITH NOTICE   s/Marden,J.<br>The clerk shall incorporate this Temporary restraining order with notice in the docket by reference.<br>Copies mailed to Atty. and David Manter,Pro Se. |
| 3/20/98 | Notice of setting of preliminary injunction on 4/24/98 at 9:00 a.m. sent to atty and Dft. |
| 3/20/98 | Original summons with completed returns of service on David and Roberta Manter on March 13, 1998 filed. |
| 4/2/98 | Answer and counterclaim of defendant David Manter filed.  s/Manter,Pro Se<br>Answer and counterclaim of defendant Roberta Manter filed.  s/Manter,Pro Se<br>Motion to dismiss filed.  s/Manters, Pro Se<br>Motion for enlargement of time filed.  s/Manter,Pro Se<br>Certificate of service filed.  s/Manter,Pro Se |
| 4/10/98 | MOTION FOR ENLARGEMENT OF TIME, Marden, J.   (dated 4/9/98)<br>Any memorandum of law must be filed by 4/17/98.<br>Copies mailed to atty of record and Dfts. |
| 4/16/98 | Pretrial scheduling statement filed.  s/Davis,Esq.<br>Plaintiffs motion to dismiss defendants counterclaim filed.  s/Davis,Esq.<br>Request for hearing filed.  s/Davis,Esq.<br>Proposed order filed. |